IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Leroy Alvin McKenzie,<br><br>                       Plaintiff,<br><br>          vs.<br><br>Lt. Raines, et al.,<br><br>                       Defendants. | Civil Action No. 6:11-cv-559-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

        This matter is before the court on the defendants' motions for summary judgment (docs. 31 and 59). The plaintiff, a state prisoner proceeding *pro se*, brings this action alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

        On June 13 and June 30, 2011, the defendants filed motions for summary judgment. By orders filed June 13 and June 30, 2011, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motions. The plaintiff filed his response in opposition to both summary judgment motions on August 8, 2011.

**FACTS PRESENTED**

        The plaintiff was incarcerated in the South Carolina Department of Corrections ("SCDC") on March 11, 2004, to serve a life sentence for murder and first degree burglary. At the time of his admission into SCDC, the plaintiff was medically assessed and prescribed a "therapeutic diet" as mandated by SCDC Policy Number: ADM-16.05, Section 7.2.1-7.2.3:

Therapeutic Diets (def. m.s.j., ex. 3[1]). From March 2004 to May 5, 2008, the plaintiff's diet and therapeutic menu was "six small feedings with low sodium meat." From May 2008 to May 2011, the prescribed diet and therapeutic menu was "low sodium, six small feedings." Beginning in May 2011, the diet and therapeutic menu was "heart healthy, six small feedings" (def. m.s.j., ex. 16, Fuller aff. ¶¶ 5-8, ex. 1-3).

In this action, the plaintiff alleges that the defendants knowingly and with malice violated his rights in the following manner:

> A. Lt. Raines allegedly assaulted him in the dining hall on October 6, 2009, because he's disabled;
>
> B. Ofc. VonMutius (misspelled in caption as VonMuitis) allegedly conspired with defendant Raines in November and December 2009 to harass and intimidate the plaintiff because he's disabled;
>
> C. In January and February 2011, Ofc. Sealy allegedly prevented plaintiff from obtaining his medically prescribed diet by refusing him entrance into the cafeteria because he's disabled;
>
> D. Lt. McGhee allegedly assaulted him on February 14, 2011, because he's disabled;
>
> E. Ofc. Wonda Young allegedly declined to provide medical treatment to the plaintiff on February 14, 2011, and prevented the plaintiff from obtaining food because he's disabled; and
>
> F. SCDC Director Byars violated his ADA rights (no specifics given).

(*See* comp. and amended comp.).

---

[1] The defendants' exhibits referenced herein are attached to the motion for summary judgment filed by defendants Raines, VonMutius, Sealy, McGhee, and Young (*see* doc. 31).

2

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, or be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

A "disability" under the ADA means, with respect to an individual:  "(A)  a physical or mental impairment that substantially limits one or more major life activities of such individual;(B)  a record of such an impairment; or (C)  being regarded as having such an impairment[.]" 42 U.S.C. § 12102(1).  Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A).  "[A] major life activity also includes the operation of a major bodily function, including, but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

In general, a plaintiff seeking recovery for violation of either the ADA or the Rehabilitation Act must show:  (1)  he has a disability, (2)  he is otherwise qualified to receive the benefits of a public service, program, or activity, and (3)  he was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of his disability. *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005) (citing *Baird v. Rose,* 192 F.3d 462, 467-70 (4th Cir. 1999)).  Additionally, the "ADA does not recognize a cause of action for discrimination by private individuals, only public entities." *Baird*, 192 F.3d at 471.

The plaintiff specifically alleges he is suing the defendants in both their official and individual capacities.  Each defendant testified that their interactions with plaintiff have

4

been in their stated official capacity.[2]  Because the ADA does not recognize a cause of action for discrimination by private individuals, only public entities, the claims should be dismissed against the individual officers in their individual capacities. *See id.*

The plaintiff alleges that certain correctional officers have prevented him from receiving his medically prescribed therapeutic diet because of his disability. The defendants do not deny that the plaintiff has a disability as a result of self-inflicted gunshot wound that disrupted and impaired his digestive tract.  However, as noted above, the plaintiff must prove that he was excluded from participation in or denied the benefits of a public service, program, or activity, or otherwise discriminated against *on the basis of his disability*. *Baird*, 192 F.3d at 467-70 (emphasis added).  The evidence before the court, including affidavits of the defendants and non-parties, establishes that the actions toward the plaintiff were due to his disregard of SCDC policy and procedure and had absolutely nothing to do with his disability.

Neil Helm, the Director of Food Services at LCI, states in his affidavit that the plaintiff was never barred from getting food; he was just instructed to do it correctly pursuant to SCDC policy and procedure.  According to SCDC policy, inmates who have been prescribed a therapeutic diet receive their food from the diet line in the cafeteria.  The plaintiff is to line up with his dorm members to proceed to the cafeteria with the general population for each meal.  The plaintiff then bypasses the regular food line and goes to the diet line to pick up his meal.  He then is to return to the cafeteria to get his morning, mid-day, and evening snacks.  If the plaintiff is unable to go to the cafeteria due to a lock-down, his meals and snacks are delivered to him (def. m.s.j., ex. 17, Helms aff. ¶¶ 5-12).  According to Mr. Helm, the plaintiff is sometimes noncompliant and takes food from the regular food line.  He also often attempts to enter the cafeteria via the wrong doorway.

---

[2] The plaintiff failed to make any specific allegations against defendant Byars, the Director of the SCDC.

When this is discovered, the plaintiff is turned away and directed to proceed correctly (*id.* ¶¶ 13-14). For instance, medical notes from March and July 2005 and an incident report from December 2005 document the plaintiff's attempts to eat from the regular food line (*id.*, ex. 1-3). Additionally, Lt. Raines testified in his affidavit that the plaintiff often enters the cafeteria through an improper door and demands the officers allow him to do so because of his disability. When this happens, the plaintiff is directed to return to the line and enter the cafeteria through the correct entrance. Lt. Raines further attests that at no time has the plaintiff been prevented from obtaining his medically prescribed therapeutic diet because of his disability (def. m.s.j., ex. 18, Raines aff. ¶¶ 6-7, 12). Similarly, Sgt. Sealey testified that he has observed the plaintiff attempting to enter the cafeteria at times when he was not permitted to do so. The plaintiff was then instructed to return to his dorm until permission was given. Sgt. Sealey also recalls the plaintiff entering the cafeteria after he had just come from the pill line. His excuse on these occasions was that he needed to take food with his pills. Sgt. Sealey has personally accommodated the plaintiff's request and obtained food for him; however, the plaintiff then refused to eat the food. Sgt. Sealey testified that at no time has the plaintiff been prevented from obtaining his medically prescribed therapeutic diet because of his disability (def. m.s.j., ex. 19, Sealey aff. ¶¶ 8-14). Furthermore, Sgt. VonMutius testified in his affidavit that he has witnessed the plaintiff on numerous occasions entering the cafeteria without permission. On these occasions, the plaintiff was directed to return to his dorm until permission was given. He has also witnessed the plaintiff barge into the cafeteria, bypassing the line of inmates. On these occasions, the plaintiff was directed to go to the end of the line. Sgt. VonMutius has seen the plaintiff go through the regular food line instead of the diet food line, even though his therapeutic meals were readily available. Sgt. VonMutius stated that he has even made accommodations for the plaintiff to go to the cafeteria with diabetic inmates, who are processed into the cafeteria ahead of the general population inmates. However, the plaintiff will sometimes refuse to

do so. He testified that the plaintiff is *never* prevented from getting his mandated meals. Even on occasions when the plaintiff has not followed policy, he was still allowed to obtain his meals (def. m.s.j., ex. 20, VonMutius aff. ¶¶ 6-20).

The plaintiff also alleges he was assaulted by correctional officers because he is disabled. Lt. Raines states in his affidavit that the alleged assault on October 6, 2009, simply did not happen. Lt. Raines testified that he has no recollection of any particular incident on that day, and he has never had any physical contact with the plaintiff. He further attests that the plaintiff's accusations are either lies or the plaintiff has him confused with someone else (Raines aff. ¶ 10). As argued by the defendants, the plaintiff's claims regarding this incident are just that, claims and accusations. There is no paperwork regarding this alleged assault, and the plaintiff has submitted no evidence supporting his bald allegations.

Furthermore, Lt. McGhee and Sgt. Young state that the February 14, 2011 incident with plaintiff was due solely to plaintiff's refusal to follow a direct order. Sgt. Young testified that sometimes the plaintiff will accompany the diabetic inmates to the cafeteria, and sometimes he elects to eat with the general population. On February 14, 2011, Sgt. Young had just ordered the diabetic inmates to process to the cafeteria. The plaintiff was not with them. At the same time, a security situation occurred in the lobby of the Cooper Unit. Accordingly, all inmates who were still in Cooper Unit were ordered back on the wings until the security situation could be resolved. The plaintiff then exited the wing and demanded to be allowed to accompany the diabetic inmates to the cafeteria. Sgt. Young ordered him back on the wings and explained to him that he was not being denied food; he was just being delayed due to the security situation. The plaintiff refused to obey her order and proceeded to try to leave the Cooper Unit. When Sgt. Young again ordered him to come back, the plaintiff refused and began yelling and screaming at her. She then issued a "First Responder" call on her radio seeking assistance from other correctional officers.

Lt. McGhee responded (def. m.s.j., ex. 22, Young aff. ¶¶ 9-19). Lt. McGhee observed Sgt. Young giving the plaintiff direct orders to return to his unit and cell and the plaintiff refusing such orders. Lt. McGhee then directed the plaintiff to accompany him to a holding cell because of his disruptive behavior and failure to obey a direct order. On the way, the plaintiff continued to be disruptive, yelling and screaming at Lt. McGhee. After the plaintiff disobeyed several direct orders to stop his disruptive behavior, Lt. McGhee applied chemical spray to the plaintiff. The plaintiff was then escorted to the Special Management Unit holding cell where he was later seen and cleared by medical personnel (McGhee aff. ¶¶ 6-18).

Although plaintiff asserts he was denied medical attention, the affidavit of Lt. McGhee, the related incident report (def. m.s.j., ex. 14), and the SCDC medical note show otherwise. The medical note depicting Encounter 136 Security Init. states verbatim: "–Late Entry–On 2-14-11 at approx. 4:30 p.m. this RN saw IM in max holding cell after gassing by security for behavioral issue(s). No respiratory distress (or otherwise) noted. IM alert and oriented x3. No treatment afforded" (def. m.s.j., ex. 23). This medical record clearly demonstrates that the plaintiff received medical attention.

Based upon the foregoing, the plaintiff has failed to show that he was excluded from participation in or denied the benefits of a public service, program, or activity, or otherwise discriminated against, on the basis of his disability. Accordingly, the plaintiff's ADA claims fail.

## **CONCLUSION AND RECOMMENDATION**

Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the defendants' motions for summary judgment (docs. 31 and 59) be granted. Should the district court adopt this recommendation, any remaining nondispositive motions will be rendered moot.

s/ Kevin F. McDonald
United States Magistrate Judge

January 19, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 300 East Washington St, Room 239
> Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).